I. MIYASAKI, DOING BUSINESS AS MIYASAKI DAIRY, *v.* WILLIAM J. NOBRIGA, DOING BUSINESS AS HILO DAIRYMEN'S CENTER, DEFENDANT, BANK OF HAWAII (HILO BRANCH), GARNISHEE.

No. 2514.

SUBMITTED MARCH 27, 1943.                    DECIDED JULY 7, 1943.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

In an action of assumpsit for milk delivered to the defendant, the defendant answered by way of recoupment, setting up damages occasioned by the plaintiff's breach of the contract under which the milk was delivered. The district magistrate, after a trial, disallowed the recoupment claim and entered judgment against the defendant in the full amount prayed for in the plaintiff's suit.

The defendant appeals on points of law which are

directed against the magistrate's ruling. They are that the magistrate erred in ruling as a matter of law (1) that the contract upon which the defendant's claim of recoupment is founded, is not binding or enforceable as to the executory part thereof and was determinable at the will of either party thereto, and (2) that the plaintiff, by going out of the dairy business formerly conducted by him and thereafter failing to make further deliveries of milk to the defendant committed no breach of contract as would subject the plaintiff to liability for damages to the defendant.

The second part of the ruling that the plaintiff in going out of the dairy business and in failing to deliver milk committed no breach follows as a legal consequence from the first part of the ruling that the contract was determinable at the will of either party which in turn is decisive of the remaining part of the ruling that the contract is not binding and enforceable as to the executory part thereof. Consequently the appeal calls for a decision as to whether the contract was determinable (or may be terminated) at the will of either party.

The contract is for the buying and selling of milk for a period of ten years between the defendant on one side as the Hilo Dairymen's Center, and the plaintiff together with others severally on the other side as Dairymen and Dairies, or milk producers. Its purpose is to centralize the distribution of the milk produced by the dairies, the defendant agreeing to receive and purchase from the dairymen, and the dairymen agreeing to deliver and sell exclusively to the defendant the respective productions of their established dairies within specified margins (except such surpluses not required by the defendant) at agreed prices. To this end the defendant agreed to acquire and maintain a distribution center, equipped with suitable and proper machinery and appliances to handle the milk in accordance with the terms of the contract.

Nowhere in the document are any of the parties given the express right to terminate the contract before the expiration of the time provided by its terms. Consequently, unless there is an implied right to do so, the document, containing as it does mutual promises and reciprocal obligations, is a binding and enforceable bilateral contract, executory on both sides. (*Southwest Dairy Products Co.* v. *Coffee & Moore*, 62 F. [2d] 174; *Imperial Refining Co.* v. *Kanotex Refining Co.*, 29 F. [2d] 193.)

In the face of the clear intention of the parties and the express provision that the contract and its mutual promises "shall * * * remain in force for the period of Ten (10) years * * * ," plaintiff's counsel argues that such a right nevertheless was given to the defendant by implication. His argument is based upon the following language which refers to the defendant as the party of the first part, the distribution business as the Center, and the dairymen as the parties of the second part: "Each and every party of the parties of the second part, agrees * * * to turn over all the milk routes, customers and milk business to the Center for the use of the Center and to the benefit of the Center and of the parties of the second part (in accordance with the object and purpose of this agreement) * * * subject, however, to the following conditions: (1) That, if the party of the first part, or the Center, shall become bankrupt or insolvent; or (2) That, if the party of the first part, or the Center, shall cease to operate, conduct and/or carry on the business for which the Center has been, is now established; then, such milk routes, customers and milk business as shall be served, serviced and operated or conducted on the date of such said cessation of the business of the Center or of bankruptcy and/or insolvency of the party of the first part and/or the Center, the said such milk routes, customers and milk business shall revert to, shall immediately be returned to, the several parties of

the second part in like ratio and proportion as the ratio and proportion of the original contributions, or amounts turned over, to the Center, for and to the use of each of the said parties of the second part * * *."

It should be noted from the language of this provision that the bankruptcies, insolvencies and the cessation of the business of the center are but possible events upon which are predicated the reversion to the dairymen of certain assets beneficial to the carrying on of the milk distribution business and the implied promise of the defendant to return them. It follows therefrom that they were intended as contingencies for such a reversion, and as conditions precedent to the .obligation of the implied promise. It should be noted also that the initial promise to turn over the assets, for which the implied promise to return them is consideration, was expressly for the use and benefit of the center "in accordance with the object and purpose of this agreement," which is to centralize the distribution of milk for ten years. Consequently the turning over of the assets to the centralized distribution business was not intended to be temporary, but was definitely intended to be for the life of the contract. On the other hand any restoration of assets would be dependent upon contingencies, the nature of which would thwart or tend to thwart the purpose of the contract. The provision for the restoration guarded against results which the possible events might otherwise entail, such as the detrimental placing beyond the reach of the dairymen of assets diverted from the use and control of the central business, contrary to the objective of the contract as a whole. It was therefore intended to be a purely precautionary measure for the benefit of the dairymen. There is thus no conflict or inconsistency, but rather a harmony, with the remaining language of the contract providing mutual promises and reciprocal obligations for the carrying on of the business

for the specified time, nor is the language of the provision reasonably susceptible to an implication, suggesting a right in either party to terminate the contract at will. Consequently, the contract's life and the mutual promises sustaining it remain unaffected by the provision.

The entire document is therefore a congruous whole, composed of an interchange of mutual promises which are good considerations for each other in that they are reciprocal, binding each party, so that there is something on both sides to be done or forborne. As such it is a valid and enforceable bilateral contract (*Union Trust Co.* v. *Carey*, 36 Haw. 390) which neither party may terminate at will. (*Southwest Dairy Products Co.* v. *Coffee & Moore*, *supra; Imperial Refining Co.* v. *Kanotex Refining Co.*, *supra.*)

Issues other than the one herein discussed which may arise upon a remand are not before us and we express no opinion as to any such possible issues. The magistrate having ruled that the contract upon which the defendant relied was terminable at the will of either party, no other issue is presented by the appeal. Since we cannot foresee what additional issues may be presented we add this precautionary statement to prevent being confronted with an argument that all possible issues in the future have been decided.

For the reasons assigned the judgment appealed from is vacated and set aside. The cause is remanded to the court below for such further proceedings as may be proper.

*J. Akau & T. Monden* for defendant-appellant.

*F. L. Harlocker* for plaintiff-appellee.

### CONCURRING OPINION OF PETERS, J.

I do not believe that the condition upon which the milk routes, customers and milk business should revert and be returnable to the several dairymen who subscribed

402

to the agreement of March 26, 1941, as parties of the second part, *i.e.*, "if the party of the first part, or the Center, shall cease to operate, conduct and/or carry on the business for which the Center has been, is now established," is susceptible of the construction that there was thereby reserved to the Center the right to terminate said contract at will and this whether the condition was supported by a consideration or not. Nor do I believe that the bare finding of the magistrate that Miyasaki, doing business as Miyasaki Dairy, one of the parties of the second part (plaintiff-appellant herein), "by selling his dairy cattle, going out of the dairy business formerly conducted by him, and thereafter failing to make further deliveries of milk to the defendant, committed no breach of such agreement or contract as would subject the Plaintiff to liability for damages to the Defendant," is justified upon any of the grounds urged in this court by appellee.

Under the circumstances the judgment subject to the appeal must be reversed.